[No. D010585. Fourth Dist., Div. One. Jan. 14, 1991.]

GREAT AMERICAN WEST, INC., Plaintiff and Appellant, v. SAFECO INSURANCE COMPANY OF AMERICA, Defendant and Respondent.

COUNSEL

Jennings, Engstrand & Henrikson, Gerard Smolin, Jr., and Kevin D. Bush for Plaintiff and Appellant.

Stephen J. Sundvold and Jay Sondhi for Defendant and Respondent.

OPINION

**WIENER, Acting P. J.**—This dispute between two insurance companies is a product of the uncertainty in the insurance world which preceded the Supreme Court's decision in *Prudential-LMI Com. Insurance* v. *Superior Court* (1990) 51 Cal.3d 674 [274 Cal.Rptr. 387, 798 P.2d 1230]. In *Prudential*, the court held that in first party insurance cases involving progressive continuing property damage, the insurer "on the risk" at the time the damage is first manifest is responsible for the entire loss. (*Id.* at p. 699.) Damage is manifest at "that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered." (*Id.* at pp. 687, 699.)

Here, the underlying insureds David and Joyce Abrams filed a claim with their homeowner's carrier, plaintiff Great American West, Inc., to recover for subsidence damage. Defendant Safeco Insurance Company of America had insured the Abramses several years earlier. Conflicting caselaw (and perhaps nebulous facts) caused Great American to be uncertain as to the extent of its responsibility for the Abramses' loss. Commendably, Great American decided to pay the claim and later seek reimbursement from Safeco in an appropriate amount. Unfortunately, it failed to realize that the Abramses might be precluded from recovering against Safeco because of a provision in the Safeco policy which required that suits "on the policy" be filed within one year after "inception of the loss."

The question presented by this case is whether and how the one-year limitation in the Safeco policy affects Great American's action against Safeco for contribution and/or indemnity. We conclude that because Safeco's responsibility for the Abramses' loss is solely contractual, the time limitation provision of the insurance contract cannot be ignored by a party seeking contribution or indemnity.

Two different theories are presented as to how the one-year limitation in an insurance policy applies to an action for contribution or indemnity

brought by a co-insurer. One would treat the co-insurer's claim as a subrogation action and require that it be filed within the same one-year limitation applicable to a suit by the insured. A second would view the contribution/indemnity claim as an independent cause of action which does not accrue until the party seeking reimbursement makes payment to the damaged party. According to this theory, such a claim is timely if filed within two years of the payment by the co-insurer as long as the insured had an enforceable claim against the indemnitor/contributor at the time of payment.

We find it unnecessary to decide the precise rule to be applied because, under either theory, Great American's claim against Safeco is untimely. Accordingly, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Between 1976 and 1981, the Abramses were insured under a homeowner's insurance policy issued by defendant Safeco. Beginning in 1981, the Abramses switched their homeowner's coverage to plaintiff Great American.

In 1978, David Abrams first noticed cracks in the driveway and an entranceway sidewalk to his house. By October 1985, the increased damage to the home's structure and foundation caused the Abramses to file a proof of loss with Great American. In June 1986 Great American settled that claim by paying the Abramses $112,940.

Two years later in June 1988, Great American filed this action against Safeco claiming a right to contribution and/or indemnification and alleging that the damage to the Abramses' residence was "first manifest" during the Safeco policy period.[1] Safeco responded by successfully moving for summary judgment, arguing Great American's action was in reality one for subrogation. Safeco convinced the court that because the Abramses had failed to make a claim within one year of the damage as required by the Safeco policy, Great American's suit was barred.

### DISCUSSION

Many legal decisions turn on how an argument or factual circumstance is classified. As framed by the parties, the issue in this case involves such a

---

[1] We emphasize this is merely an allegation in Great American's complaint. Consistent with *Prudential-LMI*, the Abramses would presumably contend that the damage was "first manifest" in 1985 when their claim was filed. (See 51 Cal.3d at pp. 687, 699.)

question of characterization. Safeco contends Great American's suit is a subrogation action; as a result, Great American "could have no rights that [the Abramses] did not have." (*Continental Mfg. Corp.* v. *Underwriters at Lloyds London* (1960) 185 Cal.App.2d 545, 556 [8 Cal.Rptr. 276].) Because it is conceded the Abramses would be barred by the one-year limitations period included in their Safeco policy,[2] Safeco argues that Great American as the Abramses' subrogee is similarly barred.

Great American does not dispute this statement of the law; it simply contends it is inapplicable. According to Great American, this is an action for contribution/indemnity,[3] not one for subrogation. It asserts such an action by an insurer is independent of the insured's cause of action against a co-insurer and that the action does not accrue for statute of limitations purposes when the insured suffers a loss but only after the insurer pays the claim. (Cf. *People* ex rel. *Dept of Transportation* v. *Superior Court* (1980) 26 Cal.3d 744, 748, 751-752 [163 Cal.Rptr. 585, 608 P.2d 673].) Thus here, Great American argues, its action, filed less than two years after it paid the Abramses' claim, was timely. (See Code Civ. Proc., § 339, subd. 1.)

Unlike the parties, we do not view the characterization of Great American's action as dispositive of the issues in this case. ■■■ Fundamentally, we must decide if the one-year time limitation in the Safeco policy has any effect on Great American's suit for contribution and/or indemnity. We conclude it must impose some limitation on Great American's ability to obtain reimbursement for amounts paid to the Abramses. We find it unnecessary to determine the precise effect because under either of two suggested theories, Great American's action was untimely.

I

Great American contends it makes no difference how long after the damage was first manifest that it brought suit against Safeco to obtain

---

[2] In the standard statutory language (see Ins. Code, § 2071), the Safeco policy provided: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, *and unless commenced within 12 months next after inception of the loss.*" (Italics added.)

[3] At the time this action was filed, Great American relied on *California Union Ins. Co.* v. *Landmark Ins. Co.* (1983) 145 Cal.App.3d 462 [193 Cal.Rptr. 461] in assuming that it possessed a right of equitable contribution against Safeco. The Supreme Court has recently explained that, at least in first party insurance cases involving progressive continuing property damage, the insurer "on the risk" at the time the damage is first manifest is responsible for the entire loss. (*Prudential-LMI Com. Insurance* v. *Superior Court, supra*, 51 Cal.3d 674, 699.) Because Great American contends Safeco was "on the risk" at the time of manifestation—and therefore responsible for the entire loss—it would now appear Great American's contention is more properly termed a claim for equitable indemnity.

reimbursement. ██ ██ It asserts the only requirement is that the suit be filed within two years of the date it paid the Abramses' claim.[4]

This argument improperly seeks to strip Great American's indemnity claim from the Safeco insurance policy on which it is based. Safeco has no responsibility except as provided by the terms of its contract with the Abramses. One provision of that contract specifies the time within which a suit "on the policy" must be filed. Where a party like Great American seeks indemnity based on another party's (Safeco's) contractual responsibilities, provisions of the contract imposing time constraints—like any other provision of the contract—cannot be ignored. To do so would be to impose liability no longer based on the contract.

The cases relied on by Great American do not support its contention that contractual time limits are irrelevant in a contribution or indemnity action against an insurer. (See *Valley Circle Estates* v. *VTN Consolidated, Inc.* (1983) 33 Cal.3d 604 [189 Cal.Rptr. 871, 659 P.2d 1160]; *People* ex rel. *Dept. of Transportation* v. *Superior Court, supra,* 26 Cal.3d 744.) Both were tort actions in which the party from whom contribution or indemnity was sought relied on the fact that the statute of limitations had run against the original plaintiff in the tort action. Although the Supreme Court held in both cases that the contribution or indemnity action was not similarly barred, the holdings were explicitly limited to the tort context. (*Valley Circle Estates* v. *VTN Consolidated, Inc., supra,* 33 Cal.3d at p. 611; *Dept. of Transportation, supra,* 26 Cal.3d at pp. 751-752.)

---

[4] Among the interesting issues we do not address is why Great American apparently decided to pay the Abramses' entire claim rather than only that portion of the damage which occurred after the beginning of the Great American policy period in 1981. There may of course be facts not apparent on this record which provide an explanation. From a purely legal perspective on the record before us, however, even the *California Union* case (see *ante,* fn. 3)—which held that a postmanifestation carrier may be jointly and severally liable for progressive continuing damage—limited such liability to that portion of the damage which occurred during the successive insurer's policy period. (See 145 Cal.App.3d at p. 478.) Following *Prudential-LMI,* of course, it would appear that any amount Great American paid it did so as a volunteer because postmanifestation carriers have no liability for continuing property damage.

We would not require that Great American anticipate the Supreme Court's ultimate conclusions in *Prudential-LMI* in order to successfully maintain an action for contribution or indemnity. While we do not decide the issue, it should be sufficient if Great American paid amounts for which Safeco was totally or jointly responsible in the reasonable belief it might also be responsible. (Cf. 73 Am.Jur.2d, Subrogation, § 25, p. 615 ["[A]n insurer who acts in good faith to discharge a disputed obligation does not become a mere volunteer if it is ultimately determined that its policy did not apply"]; see generally *State Farm & Casualty Co.* v. *Cooperative of American Physicians, Inc.* (1984) 163 Cal.App.3d 199, 203-204 [209 Cal.Rptr. 251].) To the extent Great American's payment to the Abramses included sums attributable to pre-1981 damages, however, we see no way it could properly maintain an action for either contribution or indemnity, regardless of the date of manifestation.

The reason for such a restriction is understandable. The Legislature creates a *statute* of limitations. It is within the Legislature's power to determine how long the limitations period should be and from what point it should run. Fundamentally, both *Valley Circle* and *Dept. of Transportation* are statutory interpretation cases in which the court determined the Legislature did not intend indemnity and contribution actions to be governed by the statute of limitations applicable to the underlying tort action.[5] (See *Valley Circle Estates* v. *VTN Consolidated, Inc., supra,* 33 Cal.3d at pp. 608-609; *Dept. of Transportation* v. *Superior Court, supra,* 26 Cal.3d at p. 752.)

The situation is different, however, where the potential indemnitor's liability is solely contractual. ■ Limitations periods in insurance policies are not "statutes" of limitation; they are contractual limitations on the insurer's liability. ■ Here, Safeco bargained to indemnify the Abramses for certain losses provided claims were timely filed and suits on the policy were brought within one year. Once those contractual time limits expired—assuming no extenuating circumstances such as tolling, waiver or estoppel—there is no longer any contractual liability on which an indemnity or contribution claim against Safeco can be based.

## II

While contractual time limitations cannot be ignored by a party seeking indemnity, it is not completely clear how those limits relate to an indemnity action brought by a third party insurer. It would be simple to conclude that any action which relies on the policy—either a direct action by the insured or an indirect action for indemnity or contribution by another insurer— must be brought within the one-year limitations period provided for in most policies. Were that the rule, Great American's action is most certainly time barred.

Such a rule, however, eliminates any distinction between the direct and indirect action. Some commentators find this distinction important. In separate subchapters of Insurance Claims and Disputes (2d ed. 1988), Windt discusses contribution, indemnity and subrogation, identifying their similarities and surveying their differences. (*Id.* §§ 10.01-10.11, pp. 522-554.) He argues that when one insurance company pays a claim which should have been paid entirely by another company, the paying company has both rights of subrogation (the substituted direct action) and indemnity (the indirect

---

[5] A similar analysis distinguishes the court's decision in *Regents of University of California* v. *Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d 624 [147 Cal.Rptr. 486, 581 P.2d 197] holding that the running of the statute of limitations as to the principal debtor does not exonerate the surety, whose payment gives it a new right of reimbursement against the debtor. (*Id.* at pp. 634, 638.)

action). (*Id*. § 10.11, pp. 552-553.) Windt goes on to explain why the distinction is important:

"That distinction has significance in one context. When an insurer is deemed to be suing solely in subrogation, the statute of limitations applicable to its cause of action will be the same statute of limitations that would have been applicable had the insured brought suit in his or her own behalf. Moreover, the statute will be deemed to have begun to run from the date of the insured's loss, not the date of the insurance payment. That is not the case, however, if the insurer is suing for indemnity . . . . [I]ndemnity claims are independent causes of action and the statute of limitations for such claims does not begin to run until the insurance company has provided policy benefits to the insured." (*Windt*, Insurance Claims and Disputes, *supra*, § 10.11, at p. 554.)

While it may first appear that Windt's analysis supports Great American's argument that the contractual limitations period is irrelevant for the purposes of an indemnity or contribution action, Windt later qualifies his discussion:

"Claims for contribution and indemnity . . . do not accrue, and the statute of limitations does not begin to run, until the time of payment. Insurance companies should not, therefore, be barred from pursuing reimbursement claims against other insurers on the grounds that the statute of limitations has run as to the insured's cause of action against such other insurers. *It is enough if the insured had a viable cause of action against such insurers at the time the contribution or indemnity claim came into existence.*" (*Windt*, Insurance Claims and Disputes, *supra*, § 10.11, at p. 562, italics added, fn. omitted.)

He goes on to note that the critical question is "not whether the limitations period had run prior to institution of the lawsuit, but whether it had run prior to payment of the insured's claim. If the limitations period had run by the time of the payment, the paying insurer would not have paid a debt that was concurrently owed by the other insurer. By virtue of the expiration of the limitations period, the other insurer's policy would no longer have provided any coverage. In that event, therefore, the paying insurer's contribution claim would never have come into existence." (*Windt*, Insurance Claims and Disputes, *supra*, § 10.11, at p. 563, fn. omitted.)

In this case, Great American contends Safeco is liable because the Abramses' loss was "first manifest" during the Safeco policy period. (See *ante*, p. 1148.) Assuming this occurred on the last day of the Safeco policy period in 1981 (see *Stinson* v. *Home Ins. Co.* (N.D.Cal. 1988) 690 F.Supp. 882, 884), Great American would possess an enforceable claim for indemni-

ty or contribution under Windt's analysis only if, at the time it paid the Abramses' claim, Safeco remained contractually liable to the Abramses. Here, Great American paid the Abramses' claim in June 1986, almost four years after the one-year contractual limitations period expired on Safeco's obligations. To paraphrase Windt, Great American's claim for contribution and/or indemnity never came into existence because at the time it paid the Abramses' claim, Safeco was no longer under any contractual obligation to cover the loss.

It is thus unnecessary for us to decide whether an action for indemnity or contribution by a third party against an insurer must be filed within the one-year limitations period provided for in the contract, or whether it is sufficient if the one year had not yet expired at the time the third party made payment to the insured and the indemnity or contribution rights arose. Under either theory here, Great American's action against Safeco was too late.

### DISPOSITION

Judgment affirmed.

Todd, J., and Froehlich, J., concurred.