[No. F023254. Fifth Dist. Jan. 14, 1997.]

JOE OROSCO, Plaintiff and Appellant, v.
SUN-DIAMOND CORPORATION et al., Defendants and Respondents.

**COUNSEL**

Gilmore & Hancock, Robert G. Gilmore, Tritt & Tritt and James F. Tritt for Plaintiff and Appellant.

Baker, Manock & Jensen, Kendall L. Manock, Mark W. Snauffer, Kathleen A. Meehan, Klauschie & Shannon, Jack A. Klauschie, Jr., Hurlbutt, Clevenger, Long, Vortmann & Rauber, John L. Rozier, Robert W. Fischer, Jr., Dewey Ballantine, Tuttle & Taylor, Robert G. Taylor and Julio A. Thompson for Defendants and Respondents.

**OPINION**

**VARTABEDIAN, J.**—Appellant Joe Orosco lost his arm in an industrial accident. His employer, Sun-Maid Growers, Inc. (hereafter Sun-Maid), had workers' compensation insurance under which appellant filed a claim. The question presented here is whether appellant may also recover, in tort, from respondent corporations engaged in various business pursuits with and on behalf of Sun-Maid. We conclude appellant has failed to raise a triable issue of material fact concerning respondents' liability. (Code Civ. Proc., § 437c,

subd. (c).) We affirm the judgment entered on the trial court's order granting summary judgment for respondents.

*Factual and Procedural History*

The nature and cause of appellant's injury are undisputed. On September 10, 1991, while appellant was repairing a raisin elevator, his arm became trapped when a fellow employee activated the elevator by means of a remote switch purposefully wired to bypass the safety switch at appellant's location. Appellant's arm was amputated at the shoulder.

Sun-Maid is an incorporated agricultural cooperative. Its members produce raisins and other fruit, which the cooperative processes, packages and sells. In 1983 or 1984, Sun-Maid installed the processing line that included the raisin elevator that injured Orosco. Although the elevator and other segments of the line had separate electrical switches to control their operation, someone determined it was appropriate to install an override switch at the beginning of the line, so all the machines could be turned on for the clean-up process. When a new director of operations took over at the Sun-Maid plant in 1986 and discovered this situation, the decision to utilize this central override switch was reaffirmed.

Beginning in 1980, Sun-Maid became a member of a marketing cooperative, respondent Sun-Diamond Corporation (hereafter Sun-Diamond). Sun-Diamond is owned by four production cooperatives. Valley Fig Growers owns a 2 percent interest. Sun-Maid, respondent Diamond Walnut Growers (hereafter Diamond Walnut) and respondent SunSweet Growers (prunes) (hereafter SunSweet) each own one-third of the remaining 98 percent of Sun-Diamond.

In 1980, the three major owners of Sun-Diamond contracted with Sun-Diamond (then known as Diamond/Sunsweet, Inc.) as their exclusive agent to "[p]erform all operating functions including, but not limited to, sales, pricing, advertising, promotions, publicity, processing, packaging, distribution, warehousing, administration, and maintenance of accounting records . . . ." Included in this agency was the "authority over all present or future employees of [Sun-Maid and the other owner-cooperatives], to hire, to determine employment terms, and to transfer employees from the payroll of either [*sic*] [owner-cooperative] to the payroll of Agent or from either [owner-cooperative] to the other." The 1980 agreement was in effect through 1988, when it was replaced by a new agency agreement, described below.

Notwithstanding the apparent delegation of authority in the 1980 agreement, "Sun-Diamond had no control, authority, or responsibility for the plant

operations at Sun-Maid's Kingsburg location," the site of Orosco's accident. Further, at all relevant times "each Sun-Diamond member . . . retained exclusive control over matters relating to its real and personal property, equipment, plant operations, employees, and grower-members."

In 1988, the owner-cooperatives negotiated a new agency agreement with Sun-Diamond. The 1988 agreement established Sun-Diamond as the exclusive domestic marketing and sales agent for all products of the owner-cooperatives, and as nonexclusive agent for international and bulk sales. In addition, Sun-Diamond was authorized to provide management services as directed by its owners. These services include legal, personnel, insurance and marketing research services, as well as loan management and financial/accounting services.

Thus, whereas the 1980 agreement stated the owner-cooperatives' intention to appoint Sun-Diamond as their agent to perform "all operating functions," the 1988 agreement stated an intention to appoint Sun-Diamond to perform "certain management services." There is no indication in the record, however, that the actual operation of the Sun-Maid raisin plant changed in any way as a result of the transition to the 1988 agreement.

On July 23, 1992, appellant sued Sun-Diamond, an electrical contractor, an electrical controls manufacturer and Does 1 through 50. The complaint alleged the Does were in a joint venture with the other defendants for "the design, manufacture, construction, repair, maintenance, installation and testing" of the processing line. Sun-Diamond served its answer to the complaint on October 14, 1992. At some point not revealed by our record, the remaining respondents, SunSweet, Diamond Walnut and Sun-Land Products of California (hereafter Sun-Land)[1] were designated as Does 1-3. These defendants served answers in early 1994.

SunSweet and Diamond Walnut filed a motion for summary judgment on July 18, 1994. Sun-Diamond and Sun-Land filed a similar motion July 20, 1994. All parties filed declarations, deposition excerpts and documentary evidence in support of their separate statements of undisputed facts. The court heard the motions for summary judgment on November 15, 1994.

On December 2, 1994, the court filed a lengthy order granting the summary judgment motions. The court concluded that (a) appellant had not shown respondents and Sun-Maid shared profits (and could accordingly be a joint venture), and (b) appellant had not properly pled an alternative theory

---

[1]Sun-Land is a for profit corporation that markets collateral products such as mixed dried fruit and the Sun-Maid trademark for use on raisin bread. It is owned by Sun-Diamond.

of liability (the "single enterprise" theory). Judgment for respondents was filed on December 12, 1994. Appellant's motions for "new trial"[2] and for leave to file an amended complaint were denied at a hearing on February 2, 1995.

## *Discussion*

Before beginning our discussion, we establish the context of the present dispute. ■ "Under the Workers' Compensation Act . . . , all employees are automatically entitled to recover benefits for injuries 'arising out of and in the course of the employment.' " (*Privette* v. *Superior Court* (1993) 5 Cal.4th 689, 696-697 [21 Cal.Rptr.2d 72, 854 P.2d 721].) "When the conditions of compensation exist, recovery under the workers' compensation scheme 'is the exclusive remedy against an employer for injury or death of an employee.' " (*Id.* at p. 697.) Recovery under workers' compensation does not provide the full range of relief available in a personal injury tort action (*ibid.*), and the workers' compensation remedy denies any recovery at all for noneconomic damages such as pain and suffering. (2 Witkin, Summary of Cal. Law (9th ed. 1987) Workers' Compensation, § 249, p. 820.)

A worker can, however, sue in tort a third party whose negligent or intentional act has injured the employee. (*Privette* v. *Superior Court, supra*, 5 Cal.4th at p. 697.) The employee is entitled to a full range of tort relief; the third party tortfeasor is liable for noneconomic damages to the extent of his proportionate fault. (*DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 598, 604 [7 Cal.Rptr.2d 238, 828 P.2d 140].)

■ In the present case, appellant seeks to constitute the respondents as neither "employers," with liability limited by the workers' compensation act, nor as third parties, whose liability is limited by their own fault in causing the injury to the worker. Instead, appellant seeks to impose full tort liability on respondents without any showing that they were directly at fault in causing his injury.

Appellant's argument urging reversal involves two distinct components or propositions, both of which must be true in order for appellant to prevail. First, he must demonstrate there is a triable issue of fact whether Sun-Maid and respondents were engaged in a joint venture for the processing of raisins—that is, sorting, cleaning, stemming and packaging them for sale. Second, he must establish that respondents share liability for appellant's injury, not because of their action or inaction in the particular instance, but

---

[2]The parties have referred to this motion throughout as a motion for new trial, instead of the more customary motion for reconsideration.

because of respondents' structural interrelationships with appellant's employer, Sun-Maid. Our examination of both of these necessary propositions will reveal appellant has established neither of them.

### A. *Existence of the joint venture.*

Appellant's first proposition can be summarized essentially as follows: There is abundant evidence that Sun-Diamond and its owner-cooperatives (Sun-Maid, Diamond Walnut and SunSweet) are jointly engaged in marketing and sale of fruit and nuts; this evidence is sufficient to support a jury verdict that this joint enterprise is a joint venture. Appellant stresses that the 1980 agency agreement designates Sun-Diamond as the owner-cooperatives' agent for "all operating functions"; accordingly, there is a reasonable inference that the relationship demonstrated between Sun-Diamond and its owner-cooperatives in the marketing and sales area also existed across all operating functions, including processing of raisins at the Sun-Maid plant.

For purposes of discussion, we assume the evidence is sufficient to show that, as to marketing and sales, Sun-Diamond and its owner-cooperatives have a relationship "akin to that of joint venturers." (*Universal Sales Corp.* v. *Cal. etc. Mfg. Co.* (1942) 20 Cal.2d 751, 764 [128 P.2d 665]; compare *Enos* v. *Picacho Gold Min. Co.* (1943) 56 Cal.App.2d 765, 772 [133 P.2d 663], with *McSherry* v. *The Market Corporation* (1933) 129 Cal.App. 330, 333 [18 P.2d 776].) We likewise concede that the language of the 1980 agreement is extremely broad, and "all operating functions" expressly includes "processing" of raisins. In the absence of any further information—i.e., if time and circumstances had somehow wiped out any additional knowledge about the period from 1980 through 1988, one might plausibly infer that the joint venture of the owner-cooperatives, acting through Sun-Diamond, actually ran the Sun-Maid raisin plant during that time. This picture of extensive knowledge of joint marketing and sales activities and a formal framework for joint control of raisin production (the 1980 agreement), with a hiatus of information about the actual control of raisin production, is essentially the picture painted by appellant's various separate statements of undisputed fact.

The evidentiary record concerning actual control and operation of the raisin plant is not blank for the relevant period, however. Respondents have established, with no conflicting evidence whatsoever from appellant, that Sun-Maid itself, by itself, ran the raisin plant both at the time the override switch was installed and at the time of the accident. In light of this uncontradicted evidence, nothing in the record raises a triable issue of fact whether Sun-Diamond actually exercised, on behalf of the (assumed) joint venture, control over the raisin processing operations.

Appellant argues, however, that Sun-Maid, not Sun-Diamond, could have been running the raisin plant *on behalf of the joint venture*. Appellant cites numerous cases for the proposition that a joint venture may delegate responsibilities exclusively to a particular member of the venture without destroying the fundamental nature of the enterprise as a joint venture. (See *Stilwell v. Trutanich* (1960) 178 Cal.App.2d 614, 619 [3 Cal.Rptr. 285] [written joint venture agreement delegated sole management responsibility to one venturer].) Appellant's position is stymied on the present facts because there is no evidence at all that the (assumed) joint venture delegated any responsibility in any manner to Sun-Maid. That is, there is no document equivalent to the 1980 agreement by which the other cooperatives grant Sun-Maid the authority to run its own raisin plant, nor is there evidence of any oral delegation of such authority.

■ There are three basic elements of a joint venture: the members must have joint control over the venture (even though they may delegate it), they must share the profits of the undertaking, and the members must each have an ownership interest in the enterprise. (*580 Folsom Associates v. Prometheus Development Corp.* (1990) 223 Cal.App.3d 1, 15-16 [272 Cal.Rptr. 227].) ■ It is true, as appellant argues at length, that the members can meet these requirements in many different ways. In the present case, however, there is not a shred of evidence that any entity other than Sun-Maid has any control over the production of raisins, or indeed that Sun-Maid would have to answer to Sun-Diamond or the owner-cooperatives if it decided to completely withhold raisins from the market for a season or until the raisins brought a particular price. There is no evidence that any entity shares with Sun-Maid the profits from producing raisins.[3] And there is no evidence that any entity other than Sun-Maid has an ownership interest in the raisin crop prior to its sale in the marketplace. In sum, the evidence does not raise a triable issue of fact whether a joint venture composed of respondents and Sun-Maid engaged in the production of raisins at the Sun-Maid plant.[4]

---

[3]Sun-Maid and the other owner-cooperatives indeed share the "profit" of the marketing and sales enterprise, in the form of reduced expenses in these areas. There is no evidence the cooperatives share the savings in a comparable manner if Sun-Maid implements a money-saving process at its production facilities.

[4]In addition to its joint-venture formulation of the argument, appellant argues to the same effect under the "single enterprise" theory. "The theory has been described as follows: ' "In effect what happens is that the court, for sufficient reason, has determined that though there are two or more personalities, there is but one enterprise; and that this enterprise has been so handled that it should respond, as a whole, for the debts of certain component elements of it." ' " (*Las Palmas Associates* v. *Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1249-1250 [1 Cal.Rptr.2d 301].) Such a finding is appropriate to prevent fraud or oppression by a corporate entity, and is similar to the "alter ego" theory. (*Id.* at p. 1249.) Because the

B.  *Liability of a nonnegligent joint venturer.*

The keystone of this second part of appellant's argument is *Rogness* v. *English Moss Joint Venturers* (1987) 194 Cal.App.3d 190 [239 Cal.Rptr. 387]. We conclude appellant has drawn an incorrect legal principle from the *Rogness* opinion.

Rogness and Stern were carpenters employed by Monticello Homes, Inc. Monticello was a joint venturer in English Moss Joint Venturers. Rogness and Stern worked on other projects of Monticello's as well (194 Cal.App.3d at p. 193), but on the day in question they were working, as Monticello employees, on a house being built by the joint venture. (The opinion gives no information about the nature of this arrangement, i.e., whether labor was Monticello's contribution to the joint venture; whether it was a subcontractor of the joint venture, being paid to frame the house; whether the joint venture simply reimbursed Monticello for the cost of its laborers; or whether some other arrangement existed.) Rogness and Stern were injured when a wall collapsed on them. (*Id.* at p. 191.)

As phrased by the court, the issue to be decided was whether "an employee of one party in a joint venture is . . . as a matter of law also an employee of the joint venture itself or the other joint venturers and therefore is . . . limited to his workers' compensation remedy under the Labor Code in seeking recovery from the remaining joint venturers *for alleged negligence.*" (194 Cal.App.3d at p. 191, italics added.) The court concluded: "Joint venturers who wish to rely upon [the exclusive remedy provision of] Labor Code section 3601 in order to avoid general exposure to employment related tort actions by employees of their other joint venturers must cause the joint venture to employ such individuals." (*Id.* at p. 194.)

A critical ambiguity in the *Rogness* opinion involves the phrase rendered in italics, above: the employees were seeking recovery in tort "for [*whose?*] alleged negligence." Appellant says the negligence in *Rogness* was the employer's negligence; i.e., *Rogness* was about the derivative liability of one joint venturer for the torts of another joint venturer. Respondent contends, on the other hand, that the negligence in *Rogness* was the negligence of the joint venture itself; i.e., that the opinion makes sense only if the employees of Monticello were injured during the course of their employment by someone acting on behalf of the (third party) joint venture.

single-enterprise theory is only invoked to prevent fraud or oppression, it is therefore a much narrower theory of liability than joint venture theory. This is not a fraud case, and appellant does not claim it is. Because no equitable basis exists here for invoking the single-enterprise theory, we need not decide whether the theory is adequately pled in appellant's complaint, nor whether the court should have permitted appellant to amend the complaint to adequately allege that theory of liability.

We agree with respondents: We have no disagreement with *Rogness* if the negligence in question was the negligence of the joint venture. *Rogness* would simply stand for the proposition that a joint venture is in the same position as any other third party tortfeasor who injures another's employee. (See *DaFonte* v. *Up-Right, Inc.*, *supra*, 2 Cal.4th 593, 598 [tort liability for negligent third party injury of an employee].)

If, on the other hand, *Rogness* were taken for the proposition that a joint venture may be derivatively liable in tort as a result of one venturer's negligent injury of that venturer's own employee, then *Rogness* would be erroneous, in our opinion. *Privette* v. *Superior Court, supra,* 5 Cal.4th 689 leads us to conclude there should be no such derivative liability for the nonnegligent joint venture.

*Privette* involved a landowner who hired an independent contractor to resurface the tar and gravel roof of the owner's building. An employee of the contractor was injured when hot tar spilled on him. The employee recovered under the contractor's workers' compensation policy. The employee also sued the landowner in tort under the doctrine of peculiar risk. (5 Cal.4th at p. 692.) The landowner moved for summary judgment upon a showing that the roofer he hired was reputable, licensed and carried workers' compensation insurance; the owner was not present at the jobsite at the time of the injury; and the owner did not participate in the roofer's decisions that resulted in the accident. The trial court denied the summary judgment motion. The landowner sought writ relief from that order. After his writ petition was denied in the appellate court, the Supreme Court granted review. (*Id.* at pp. 692-693.)

■ Under the common law, a person can be vicariously liable for the acts of his agents and employees under the doctrine of *respondeat superior.* (2 Witkin, Summary of Cal. Law, *supra*, Agency and Employment, § 115, p. 109.) An independent contractor, however, is not an agent or employee. If the person hired an independent contractor—i.e., one over whom the person has no right of control as to the mode of doing the work (*Privette* v. *Superior Court, supra,* 5 Cal.4th at p. 693)—to perform work, the person who hired the contractor generally "was not liable to third parties for injuries caused by the contractor's negligence in performing the work." (*Ibid.*) A common law exception to this rule of nonliability developed in the case of work that "pose[s] some inherent risk of injury to others. This exception is commonly referred to as the doctrine of peculiar risk." (*Ibid.*)

"It was believed that as between two parties innocent of any personal wrongdoing—the person who contracted for the work and the hapless victim of the contractor's negligence—the risk of loss occasioned by the contracted

work was more fairly allocated to the person for whose benefit the job was undertaken." (5 Cal.4th at p. 694.)

Certain nuances have developed in the applicability of the peculiar risk doctrine in California, but, generally, current law imposes liability on the landowner for those special risks arising from the nature of the work or the general plan or method to be followed by the independent contractor, though not for negligence in the operational details of the work. (5 Cal.4th at p. 696.) The landowner, however, "is entitled to equitable indemnity from the independent contractor at fault for the injury." (*Id.* at p. 695.)

In California, from at least 1962 through *Privette*, the peculiar risk doctrine applied not only to bystanders or neighboring property owners injured by an independent contractor, but in addition covered the independent contractor's employees who were injured in the course of performing the hazardous work. (See 5 Cal.4th at p. 696.) As a result, the employee had a tort remedy against the landowner for the negligence of the employee's employer. The tort remedy was not freed from the defenses abolished in the workers' compensation arena, but by the same token the measure of damages was not restricted as in workers' compensation. (See *id.* at pp. 696-697.)

For various reasons of fairness and social policy, the Supreme Court decided in *Privette* to terminate the liability of landowners to the employees of independent contractors, where the only negligence was that of the independent contractor. (5 Cal.4th at pp. 700-702.) Two factors were of primary importance to the court. First, because of the Workers' Compensation Act's exclusive remedy provisions, a landowner is not permitted to seek equitable indemnity from the contractor whose negligence caused the injury for which the landowner was held liable. That places an unfair burden on one who is fault free and who has already paid for workers' compensation insurance as part of the price charged initially by the independent contractor. (*Id.* at p. 701.) Second, the existence of workers' compensation coverage itself accomplishes the same social goals that courts sought to achieve in developing the peculiar risk doctrine in the first instance.[5]

These same two reasons lead us to the conclusion that a nonnegligent joint venture is not liable where a member of the joint venture negligently injures the member's employee and the member of the joint venture

---

[5]The court stated: "[I]n the case of on-the-job injury to an employee of an independent contractor, the workers' compensation system of recovery regardless of fault achieves the identical purposes that underlie recovery under the doctrine of peculiar risk: It ensures compensation for injury by providing swift and sure compensation to employees for any workplace injury; it spreads the risk created by the performance of dangerous work to those who contract for and thus benefit from such work, by including the cost of workers' compensation insurance in the price for the contracted work; and it encourages industrial safety." (5 Cal.4th at p. 701.)

has provided coverage under the Workers' Compensation Act. (See *Smith* v. *ACandS, Inc.* (1994) 31 Cal.App.4th 77, 96 [37 Cal.Rptr.2d 457] [applying *Privette* to conclude landowner is not liable for injury to an independent contractor's employee negligently caused by a different independent contractor].)

Normally, of course, a partnership or joint venture is liable to an injured third party for the torts of a partner or venturer acting in furtherance of the enterprise. (9 Witkin, Summary of Cal. Law (9th ed. 1989) Partnership, § 21, p. 421.) However, a joint venture sued for the negligence of one venturer is entitled to indemnity from the negligent venturer. (See *United States Fire Ins. Co.* v. *National Union Fire Ins. Co.* (1980) 107 Cal.App.3d 456, 468 [165 Cal.Rptr. 726].) The workers' compensation exclusive remedy doctrine would operate to prevent the joint venture from seeking this otherwise-available indemnity from its member, just as that doctrine operated to shield the independent contractor from indemnity in *Privette*.

Second, the existence of workers' compensation coverage for the employee creates its own social imperative in favor of uniform compensation for all injured employees, regardless of the form of business organization that hires the particular employee. As phrased by the *Privette* court: "[T]o permit such recovery would give these employees something that is denied to other workers: the right to recover tort damages for industrial injuries caused by their employer's failure to provide a safe working environment. This, in effect, would exempt a single class of employees, those who work for [an employer who is a member of a joint venture], from the statutorily mandated limits of workers' compensation." (5 Cal.4th at p. 700; see also *Owens* v. *Giannetta-Heinrich Construction Co.* (1994) 23 Cal.App.4th 1662, 1670 [29 Cal.Rptr.2d 11].)

For these reasons, we conclude that, even if appellant could establish that a joint venture composed of respondents and Sun-Maid ran the raisin plant by or through Sun-Maid, respondents would not be liable in the absence of some negligence on the part of the joint venture or one of its members other than Sun-Maid.

C. *Appellant's other contentions.*

We have previously noted that appellant's single-enterprise theory of liability is wholly inapplicable in the present setting, a setting in which there is no allegation of fraud or oppression arising from the corporate/business structure of Sun-Diamond and its owner-cooperatives. (See fn. 4, *ante*.) We see no useful purpose in treating this issue in detail in the absence of any authority that the theory is applicable outside the fraud context.

Appellant also contends the trial court should have permitted him to introduce, as part of his showing in opposition to the summary judgment motions, two declarations by a business-structures expert to the effect that Sun-Diamond and its owner-cooperatives were engaged in a unified joint venture to bring raisins from the field to the grocery. Informed by these declarations, appellant says, the trial court should and would have granted his motion for "new trial." However, the declarations did not purport to demonstrate that respondents had engaged in any negligence nor in any direct control over the raisin processing plant. As we have set forth in part B., above, there is no liability for a joint venture arising from the injury of one member's employee as a result of that member's negligence. Accordingly, nothing in the declaration would cure the fundamental flaws in appellant's case. We therefore decline to address the question of the admissibility and timeliness of the declarations.

## Disposition

The judgment is affirmed. Costs on appeal are awarded to respondents.

Dibiaso, Acting P. J., and Wiseman, J., concurred.

A petition for a rehearing was denied February 4, 1997, and appellant's petition for review by the Supreme Court was denied April 2, 1997. Baxter, J., did not participate therein.