[No. D038635. Fourth Dist., Div. One. Apr. 8, 2002.]

SCOTTSDALE INSURANCE COMPANY, Plaintiff and Respondent, v. ESSEX INSURANCE COMPANY, Defendant and Appellant.

[black redaction block]

**COUNSEL**

Murchison & Cumming, Allison Rose and Bryan Michael Weiss for Defendant and Appellant.

Selman, Breitman & Burgess, Nicholas Banko; Selman Breitman, Linda Sharon Hsu and Greg Michael Whaling for Plaintiff and Respondent.

**OPINION**

**BENKE, J.**—This is an action for declaratory relief and equitable contribution between insurance carriers for a common insured. After a bench trial the court determined that plaintiff Scottsdale Insurance Company (Scottsdale) properly paid $225,000 to settle prelitigation claims made against the mutual insured, James Conrad Construction, Inc., arising from the construction of a house purchased by Robert Opera and his wife, Sandra Opera. The trial court required defendant Essex Insurance Company (Essex) to reimburse Scottsdale in the amount of $148,026.32. Essex appeals, arguing the trial court misapplied the law of equitable contribution and erroneously found the claim covered by its policy and gave Scottsdale an excessive judgment.

## BACKGROUND

### A. *The House*

James Conrad, a licensed architect and general contractor, built a large single-family home in Laguna Beach. Conrad's financial partner in the project was Robert Boris. Title to the property to be developed was held in Boris's name. The application for the building permit identified Boris as the owner and Conrad as the builder. Boris was not involved with the physical construction of the home. The final inspection was completed in April 1991. The Operas purchased the house in October 1991. The limited warranty provided for the house was signed by Conrad and Boris.

## B. *The Problem*

Within months of the purchase, water infiltration problems began and continued. In 1997 a sewage pump failed, spilling sewage in and under the house. At that time inspection of the house disclosed a large mold buildup resulting from the continuing water leaks. The Operas were advised to move out of the house pending cleanup and repairs. Concerned that their young son's chronic asthma condition might be related to the mold, the Operas moved out. Nine months later after completion of repairs and cleanup they moved back.

## C. *The Reaction*

In August 1997, Robert Opera, an attorney, made a written claim to Conrad, citing the significant water damage to his home and the resulting health issues. Conrad contacted his insurance agent who in turn referred the claim to Alpine Insurance Company. Alpine, like Scottsdale and Essex, insured Conrad during the relevant period.[1] Alpine hired consultants who thoroughly investigated the claim and the cost of repairs. In October 1997, Scottsdale and Essex were given notice of the claim. Scottsdale agreed to share in the cost of Alpine's investigation and obtained all the materials generated.

Essex investigated its coverage obligations and denied the claim.

At first Scottsdale also denied the claim but offered $65,000 to settle the matter. Scottsdale, however, reconsidered its decision and eventually settled with the Operas for $225,000.

## D. *Scottsdale's Action Against Essex*

Essex provided Conrad comprehensive general liability insurance from February 15, 1991, through March 21, 1993. Scottsdale provided Conrad that coverage from March 21, 1993, through April 20, 1994.

Scottsdale sued Essex, seeking declaratory relief and equitable contribution. Essex defended, arguing the Opera house was constructed as a joint venture between Conrad and Boris and the Essex policy did not cover claims arising from such associations. Essex also noted a provision of its contract with Conrad making it a condition of coverage that he obtain both certificates of insurance from all subcontractors and hold harmless agreements from all subcontractors indemnifying him against all losses for work performed and that he be named an additional insured on all subcontractor general liability policies.

---

[1] Alpine subsequently filed for bankruptcy and is not part of this action.

The trial court found the Opera claim was covered under Scottsdale's policy and that its settlement was reasonable. As to Essex's policy the trial court found no credible evidence of a joint venture between Conrad and Boris. In any event the trial court, citing *Maryland Casualty Co. v. Reeder* (1990) 221 Cal.App.3d 961, 979 [270 Cal.Rptr. 719], found that the joint venture provision of the policy only excluded coverage if Essex proved that form of doing business materially altered the insurer's risk. The court noted Essex undertook to insure Conrad's contracting business. The policy applied to injury or damage arising from such activity. The Opera claim involved damage and injury resulting from claimed faulty construction by Conrad. The fact that Conrad and Boris were involved in a joint venture did not materially alter Essex's risk and the joint venture exclusion could not be asserted as a basis for rejecting coverage. The court also found that the endorsement regarding subcontractors did not preclude coverage. Specifically, the court found (1) if the condition was enforced the policy was illusory, (2) the condition was analogous to an escape clause and thus unenforceable, (3) the condition was ambiguous, (4) the condition conflicted with the "other insurance" clause in the policy, (5) Essex was not prejudiced by lack of compliance with the condition, (6) the condition would violate the spirit of the policy since Conrad obtained other insurance to cover the loss and (7) the rights of the insurers were controlled by equitable principles and not contract language.

The court found that an allocation based on each carrier's time on the risk was proper.

## DISCUSSION

### A. *Joint Venture Coverage*

█ Essex notes that both its and Scottsdale's policy did not apply to injury or damage arising from any joint venture not designated in the policy as a named insured. Essex argues the only reasonable conclusion based on the evidence is that the Operas' damages arose from a joint venture; it was, therefore, not obligated to cover such damage and the trial court erred in requiring it make an equitable contribution to Scottsdale's settlement. Scottsdale replies Conrad and Boris were not engaged in a joint venture. It argues in any event that the joint venture exclusion is inapplicable since whatever the business relationship between Conrad and Boris, it did not materially alter Essex's risk.

#### 1. *Equitable Contribution*

█ "In the context of insurance law, the doctrine of equitable contribution may be simply stated. '[W]here two or more insurers independently

provide primary insurance on the same risk for which they are both liable for any loss to the same insured, the insurance carrier who pays the loss or defends a lawsuit against the insured is entitled to equitable contribution from the other insurer or insurers. . . .' [Citation.]" (*American Continental Ins. Co. v. American Casualty Co.* (2001) 86 Cal.App.4th 929, 936-937 [103 Cal.Rptr.2d 632].)

"One of the firm principles undergirding the doctrine of equitable contribution is that two or more insurers share an *obligation* to the common insured. Every California case of which we are aware has enforced an insurer's contribution claim only where the other insurer was also obligated to pay on the claim. (See, e.g., *Fireman's Fund Ins. Co. v. Maryland Casualty Co.* [(1998)] 65 Cal.App.4th [1279], 1288-1302 [77 Cal.Rptr.2d 296] [and cases cited thereat]; *American Continental Ins. Co. v. American Casualty Co.* (1999) 73 Cal.App.4th 508, 513 [86 Cal.Rptr.2d 560] (*American Continental (California)*); *Fire Ins. Exch. v. American States Ins. Co.* (1995) 39 Cal.App.4th 653, 657, 664 [46 Cal.Rptr.2d 135]; *Continental Casualty Co. v. Zurich Ins. Co.* (1961) 57 Cal.2d 27, 32 [17 Cal.Rptr. 12, 366 P.2d 455].) On the other hand, where there is no common *obligation that* is legally due from multiple insurers, then no basis for contribution exists. (See *Old Republic Ins. Co. v. Superior Court* (1998) 66 Cal.App.4th 128, 154 [77 Cal.Rptr.2d 642], disapproved on another ground in *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 841, fn. 13 [88 Cal.Rptr.2d 366, 982 P.2d 229] [loss paid by plaintiff insurer not covered under policy of defendant insurer]; *Great American West, Inc. v. Safeco Ins.* (1991) 226 Cal.App.3d 1145, 1152-1153 [277 Cal.Rptr. 349] [loss payment was made to insured by plaintiff insurer more than four years after the expiration of the one-year time limit in defendant insurer's policy; thus, any claim under defendant's policy was unenforceable]; *United Pacific Ins. Co. v. Hanover Ins. Co.* (1990) 217 Cal.App.3d 925, 939 [266 Cal.Rptr. 231] [even though paid by plaintiff insurer, the loss was not covered under any of the policies issued by the multiple insurers involved].)" (*American Continental Ins. Co. v. American Casualty Co., supra,* 86 Cal.App.4th at pp. 937-938.)

### 2. *Joint Venture*

■ "There are three basic elements of a joint venture: the members must have joint control over the venture (even though they may delegate it), they must share the profits of the undertaking, and the members must each have an ownership interest in the enterprise." (*Orosco v. Sun-Diamond Corp.* (1997) 51 Cal.App.4th 1659, 1666 [60 Cal.Rptr.2d 179].) ■ A joint venture may be formed by parol agreement or may be assumed as a reasonable deduction from the acts and declarations of the parties. (*Ibid.*)

### 3. *Discussion*

■ Scottsdale argues the trial court's finding that the building of the Opera house was not a joint venture of Conrad and Boris is not supported by substantial evidence. We agree. However, we conclude the trial court's alternative finding correct that if Conrad and Boris were involved in a joint venture, it did not materially alter Essex's risk and provided no basis for rejecting coverage.

■ A challenge in an appellate court to the sufficiency of the evidence is reviewed under the substantial evidence rule. (See *Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632 [80 Cal.Rptr.2d 378]; *Alderson v. Alderson* (1986) 180 Cal.App.3d 450, 465 [225 Cal.Rptr. 610].) " 'Where findings of fact are challenged on a civil appeal, we are bound by the "elementary . . . principle of law, that . . . the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the findings below. [Citation.] We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor in accordance with the standard of review so long adhered to by this court.' [Citation.]" (*Thompson v. Tracor Flight Systems, Inc.* (2001) 86 Cal.App.4th 1156, 1166 [104 Cal.Rptr.2d 95].)

■ The evidence about Conrad's relationship with Boris in the building of the Opera house is not in conflict. Conrad testified that he and Boris together owned the property on which the house was built. Conrad stated, however, he might not have been on the title. The grant deed for the property was from Boris to the Operas. Conrad testified that he and Boris agreed to develop the property, sell it and share in any profit or loss. Conrad applied for the building permits. Conrad was the contractor on the project and Boris was not involved in the physical construction of the house. Boris signed the notice of completion. Both Conrad and Boris signed the limited warranty provided to the Operas. In his testimony Conrad described their relationship as a joint venture.

Scottsdale and Essex agree that two of the three elements of a joint venture were present in the construction of the house. The men agreed to share in any profit or loss and each had an ownership interest in the enterprise. They disagree as to the third element, i.e, the requirement they have joint control over the venture.

The basis for Scottsdale's claim that joint control did not exist over the venture was testimony from Conrad that at no time did Boris have the ability or right to control any aspect of Conrad's construction business.

This misses the point. The issue is not whether Conrad and Boris were "partners" in Conrad's construction business but whether the building of the Opera house was a joint venture. It may be that given his greater expertise in design and construction, the actual building of the house was delegated to Conrad. We conclude, however, that the only reasonable conclusion is that Conrad and Boris shared joint control over their common venture. The building of the Opera house was a joint venture.

We also conclude, however, that the trial court was correct in its alternate finding that any joint venture did not materially alter Essex's risk and, therefore, the fact a joint venture existed was not a basis for Essex to deny coverage. (See *Maryland Casualty Co. v. Imperial Contracting Co.* (1989) 212 Cal.App.3d 712, 725 [260 Cal.Rptr. 797].)

The purpose of the joint venture exclusion is to protect the insurer from hidden risks it did not consider in calculating an appropriate premium. (*Maryland Casualty Co. v. Reeder, supra*, 221 Cal.App.3d at p. 979.) As the trial court noted, Essex agreed to insure Conrad's contracting business. The Operas' claim arose from defects in the construction of their house. The evidence supports the trial court's finding that Boris was not involved in the design or construction aspects of the venture. Thus, whether Conrad and Boris were involved in a joint venture did not materially alter Essex's risk. Conrad would be individually liable for damages arising from the claimed defects. (See *Austin P. Keller Const. v. Commercial Union* (Minn. 1986) 379 N.W.2d 533, 535-536 [57 A.L.R.4th 1147].)

B.  *Special Condition Endorsement*

Essex argues the trial court erred when it refused to enforce the special condition endorsement contained in its policy.

1.  *Background*

The special condition endorsement stated: "It is hereby understood and agreed that conditions for coverage under this policy are:

"1) Certificates of insurance with limits of liability equal to or greater than those provided by this policy will be obtained from all subcontractors prior to commencement of any work performed for the insured.

"2) Insured will obtain hold harmless agreements from subcontractors indemnifying against all losses from the work performed for the insured by any and all subcontractors.

"3) Insured will be named as additional insured on all subcontractors general liability policies.

"Nothing herein contained shall be held to vary, alter, waive or extend any of the terms of the conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated."

Such endorsements are nonstandard but not unusual.[2]

Conrad failed to meet the conditions of the endorsement.

The trial court refused to enforce the endorsement. It concluded the endorsement essentially rendered the policy illusory, was analogous to an unenforceable escape clause, was ambiguous and conflicted with the other insurance clause in the Essex policy. The court also found Essex was not prejudiced by the lack of compliance with the condition and that enforcement of the condition would violate the spirit of the condition since Conrad did obtain other insurance to help cover any loss.

### 2. Discussion

#### a. Illusory Contract

Essex argues the trial court erred in finding that the special condition endorsement essentially rendered the policy illusory. Scottsdale responds the endorsement does exactly that. Scottsdale contends the endorsement put Essex in a happy if unreasonable position. Scottsdale argues Essex accepted a substantial premium from Conrad but avoided any possible payment on its policy by requiring all subcontracts be covered by their own insurance and by making such insurance a condition precedent to its own liability. Thus, in Scottsdale's view, Essex took money from Conrad but in practical effect insured nothing. We agree with Essex that the endorsement did not render the policy illusory.

In order for a contract to be valid, the parties must exchange promises that represent legal obligations. (See *Bleecher v. Conte* (1981) 29

---

[2]"Some insurers include in their CGL policies a nonstandard endorsement requiring general contractor insureds to warrant that all subcontractors used will maintain certain specified minimum levels of coverage. Some of these provisions affect the premium charged the insured if it does not comply with . . . this provision, while others actually exclude coverage if the general contractor does not comply." (Turner, Insurance Coverage of Construction Disputes (2001) § 41:1; see also *id.*, § 42:1.)

Cal.3d 345, 350-351 [213 Cal.Rptr. 852, 698 P.2d 1154].) An agreement is illusory and there is no valid contract when one of the parties assumes no obligation. (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 228, pp. 236-237.)

██ Essex asserts its promise to Conrad was conditional but not illusory. It states that if Conrad satisfies the condition of the special condition endorsement, i.e, requires his subcontractors to obtain insurance naming him an insured, then Essex is required to participate with those insurers in defending and/or indemnify him. So interpreted, Essex's policy of insurance is not illusory.

### b. *Escape Clause*

Essex argues the trial court erred in finding that the subject special condition endorsement was analogous to disfavored escape clauses. We agree.

██ An escape clause acts to eliminate coverage in the presence of other insurance. (*CSE Ins. Group v. Northbrook Property & Casualty Co.* (1994) 23 Cal.App.4th 1839, 1845 [29 Cal.Rptr.2d 120].) ██ In this case the subject special condition endorsement was a condition precedent to coverage, not an escape clause. In effect, Scottsdale's claim that the endorsement is "analogous" to an escape clause is merely a restatement under another heading of its other arguments that the endorsement was unreasonable and violates public policy.

### c. *Ambiguity*

Essex argues the trial court erred in finding the special condition endorsement ambiguous and unenforceable. We agree.

Whatever else one might say about the subject special endorsement, what it requires of the insured and the effect of a failure to satisfy its requirement is clear. The endorsement requires that the insured obtain certificates of insurance from all subcontractors, that the insured obtain hold harmless agreements from subcontractors against all loss for the work performed, and that the insured be named as additional insured on all subcontractors' liability policies. The endorsement plainly states that meeting those requirements is a condition of coverage.

### d. *Other Insurance Provision*

Essex argues the trial court erred in finding that the special condition endorsement was in conflict with the other insurance clause of the policy.

Essex argues there was no conflict since the special condition endorsement did not require Conrad to obtain other insurance to eliminate Essex's obligation. Rather, it required Conrad's subcontractors to obtain additional insurance in favor of Conrad for the same time period to share with Essex the risk arising from the subcontractor's work. Essex states: "Rather than being in conflict with the other insurance clause, the Special Condition Endorsement, in effect, requires the existence of other insurance that will participate with Essex in the defense and indemnity of Conrad." We agree. We have interpreted the subject endorsement not to eliminate Essex's insurance obligation but as a requirement that Conrad require subcontractors to obtain other insurance to help cover the risk. That being the case, the endorsement does not conflict with the other insurance clause.

### e. *Impossibility of Compliance*

Scottsdale argues the special condition endorsement is void since it is impossible to perform. Scottsdale contends it is unfair to require that Conrad obtain certificates of insurance, hold harmless agreements and additional insured endorsements from all of his 25 subcontractors in order to be covered by Essex. He states he had no direct control over actions of his subcontractors and their insurance carriers. Scottsdale states: "Enforcing this provision would, therefore, hold Conrad hostage to the failures and omissions of third parties."

As Essex notes, the Scottsdale policy itself contains an endorsement similar to the special condition endorsement. Scottsdale required Conrad to obtain certificates of insurance from his independent contractors. While the consequences of failing to meet that requirement were not as onerous as under the Essex policy, Scottsdale apparently considered it reasonable and not impossible for Conrad to obtain certificates of insurance from his subcontractors.

As we have noted, endorsements requiring general contractors to warrant that all subcontractors used will maintain insurance at specific levels, and to be named an additional insured on the subcontractors' policies, is not unusual. The special condition endorsement was not impossible of performance.

### f. *Spirit of the Condition*

Scottsdale argues the special condition endorsement should not be enforced since under the circumstances of this case to do so would violate the

spirit and rationale of the condition. Specifically, Scottsdale argues the purpose of the endorsement is to compel Conrad to obtain other insurance to help Essex address the risk of insuring a general contractor. Scottsdale contends Conrad did that with the Scottsdale policy. The difficulty is that the coverage was not simultaneous. Conrad was first insured by Essex and later by Scottsdale. We understand that given the progressive and continuous nature of the damage claim in this case, both Essex and Scottsdale might be required to indemnify Conrad. Given, however, that the allocation of contribution is based on time on the risk, it is unreasonable to say that Conrad's subsequent policy with Scottsdale satisfied the spirit of the special condition endorsement in the Essex policy.

### g. *Prejudice*

Scottsdale argues even if the special condition endorsement was not otherwise defective, it is meaningless in the present context since there is no evidence Conrad's failure to comply resulted in prejudice to Essex.

Scottsdale, citing *Campbell v. Allstate Ins. Co.* (1963) 60 Cal.2d 303, 305-306 [32 Cal.Rptr. 827, 384 P.2d 155], argues that it is not enough for Essex to prove Conrad's failure to comply with the special endorsement condition but also must prove it was substantially prejudiced by such failure. Scottsdale contends there is no such evidence.

As Essex notes, however, the rule Scottsdale asserts is the "notice-prejudice" rule applicable to the notice and cooperation conditions of insurance policies. (See *Truck Ins. Exchange v. Unigard Ins. Co.* (2000) 79 Cal.App.4th 966, 977 [94 Cal.Rptr.2d 516]; *Jamestown Builders, Inc. v. General Star Indemnity Co.* (1999) 77 Cal.App.4th 341, 349 [91 Cal.Rptr.2d 514]; Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2001) ¶¶ 3:168 to 3:170, pp. 3-44 to 3-45, 3:176, p. 3-47, 6:32, p. 6A-3, 7:409, p. 7A-110, 7:419 to 7:425, pp. 7A-112 to 7A-113; 2 Cal. Insurance Law and Practice (1997) § 12.06[2] [a], p. 12-21.) Scottsdale cites no case and we find none requiring a showing of prejudice outside the notice-cooperation clause context.

In any event we agree with Essex that it was prejudiced by Conrad's failure to comply with the condition that he require his subcontractors to be insured and that he be named an additional insured in their polices. Had he done so Conrad's vicarious liability for negligence by the subcontractors would be covered both by the Essex policy and the subcontractors' policies.

As noted above the Scottsdale policy does not fill the same role as the subcontractors' policies.

The judgment is reversed. Appellant is to recover costs on appeal.

Kremer, P. J., and O'Rourke, J., concurred.