**VISION I HOMEOWNERS ASSOCIATION, INC., a Florida non-profit corporation, Plaintiff,**

**v.**

**ASPEN SPECIALTY INSURANCE COMPANY, a North Dakota corporation, and James River Insurance Company, an Ohio corporation, Defendant.**

No. 08–81211–CIV.

United States District Court,
S.D. Florida.

June 15, 2009.

Daniel S. Rosenbaum, Jennilynn E. Lawrence, John Marcus Siracusa, Mark Gerard Keegan, Richard Chambers Valuntas, Katzman, Garfinkel, Rosenbaum, LLP, West Palm Beach, FL, for Plaintiff.

Max Galen Factor, William Lanier Wallis, Gina G. Smith, Butler Pappas Weihmuller Katz et al, Tallahassee, FL, Richard Michael Dunn, Anaysa Gallardo, Cozen O'Connor, Miami, FL, for Defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

WILLIAM P. DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon Plaintiff's Motion for Partial Summary Judgment on the Invalidity of Aspen's "5% of TIV" Hurricane Deductible [DE–24], filed herein on March 2, 2009. The Court has carefully considered the Motion, Defendant's Response [DE–25], Plaintiff's Amended Reply [DE–31], Plaintiff's Notice of Supplemental Authority [DE–43], and is otherwise fully advised in the premises.

### I. BACKGROUND

Plaintiff Vision I Homeowners Association, Inc. ("Vision I") filed the above-styled action on October 21, 2008. [DE–1]. Vision I is a homeowners association and not-for-profit Florida corporation, doing business in Palm Beach County. Defendant Aspen Specialty Insurance company ("Aspen") is a foreign corporation and insurance carrier transacting insurance in Palm Beach County, Florida. It is incorporated in North Dakota and has its principal place of business in Massachusetts. Aspen provided property insurance, Policy No. PP 002120, to Vision I for the twelve month period commencing May 10, 2005. Defendant James River Insurance Company ("James River") is a foreign corporation and insurance carrier transacting insurance in Palm Beach County, Florida. It is incorporated in Ohio and has its principal place of business in Virginia. It issued excess property coverage, Policy No. 00009793, for the twelve month period commencing May 10, 2005. According to the Complaint, the intent of the contracts was to provide commercial lines residential property insurance coverage, including, but not limited to, coverage for hurricanes, for direct physical loss to the insured property for the twelve month period commencing May 10, 2005.

Hurricane Wilma struck Palm Beach County on October 24, 2005. As a result, the Complaint alleges, the insured property sustained damages and Vision I timely reported these damages to Aspen and James River. The insurers had an opportunity to inspect said damage. However, they have failed to provide Vision I with any estimate of the damages and have failed to adjust, pay, and/or settle the claim.

Count I of the Complaint seeks a declaratory judgment a) that the Aspen Contract is valid and enforceable; b) that Vision I has a valid and enforceable right to coverage and to a determination of the total

amount of all damages sustained from Hurricane Wilma; c) determining the total amount of the loss and damages caused by Hurricane Wilma to Vision I; and d) that Vision I be awarded supplemental relief to fully compensate it for all of its hurricane related damages. It also seeks a declaration that the policy fails to comply with Florida Statute Section 627.701 and therefore the provision concerning a separate hurricane deductible is unenforceable. In addition, it seeks a declaration that the provision regarding a separate "5% of TIV" deductible is ambiguous and that Aspen failed to offer it a deductible in the amount of 3% of the insured value in violation of Florida Statute Section 627.701(8). Therefore, it should be declared unenforceable and/or be construed against Aspen.

Count II of the Complaint seeks a declaratory judgment against James River that the contract between them is valid and enforceable. Count III is for a breach of contract against Aspen for a failure to pay the actual cash value of the losses or damages suffered by the property. Count IV is for a breach of contract against James River for a failure to pay the actual cash value of the losses or damages suffered by the property. Count V is for a breach of contract against Aspen for a failure to determine and pay the replacement cost value on its claim. Count VI is a breach of contract claim against James River for a breach of the replacement cost provision.

This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are diverse and the amount in controversy exceeds $75,000.

## II. SUMMARY JUDGMENT

### A. Standard of Review

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court should not grant summary judgment unless it is clear that a trial is unnecessary, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and any doubts in this regard should be resolved against the moving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Consideration of a motion for summary judgment does not lessen the burden on the nonmoving party; the non-moving party still bears the burden of coming forward with sufficient evidence on each element that must be proven. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

According to the plain language of Rule 56(e), the nonmoving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

Essentially, so long as the nonmoving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990). If the evidence advanced by the nonmoving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

## B. Vision I's Motion

### 1) Arguments

In its Motion for Partial Summary Judgment, Vision I seeks a declaration that the 5% of TIV Hurricane deductible is invalid because Aspen failed to offer a 3% deductible. Florida Statute § 627.701 was in effect from December 21, 2004 through May 31, 2005 and provided that:

Notwithstanding the other provisions of this section or of other law, but only as to hurricane coverage as defined in s. 627.4015 for commercial lines residential coverages, an insurer may offer a deductible in an amount not exceeding 5 percent of the insured value with respect to a condominium association or cooperative association policy, or in an amount not exceeding 10 percent of the insured value with respect to any other commercial lines residential policy, if, at the time of such offer and at each renewal, the insurer also offers to the policyholder a deductible in the amount of 3 percent of the insured value.

Fla. Stat. § 627.701(8).[1]  Vision I asserts that it is undisputed that the Aspen Policy is a condominium policy and that when it offered the 5% deductible, it did not offer the 3% deductible.[2]

Thus, Vision I argues, an obligation and duty was created by which Aspen was required, if it wanted to offer any hurricane deductible based on a percentage of the total insurable value of the property, to offer a deductible not exceeding 5% TIV, and if it did so, it also had to offer a 3% TIV deductible. According to Vision I, the provision in the statute is mandatory based on the restrictive language in the statute. Vision I also argues that though a penalty is not provided in that provision, the Court may still enforce it. Plaintiff

---

1. The Court would note that Aspen had filed a Motion to Stay and for Judicial Notice in regards to pending legislation in the Florida Legislature that would specifically exempt surplus lines insurers. However, the statute in effect at the time the contract was formed is the controlling law. *Lumbermens Mut. Cas. Co. v. Ceballos*, 440 So.2d 612, 613 (Fla. 3d DCA 1983). Moreover, the fact that the Legislature was contemplating legislation to specifically exempt surplus lines insurers would seem to support Vision I's arguments that the

provision at issue did apply to Aspen at the time the Policy was enacted.

2. The Court would note that in its Response, Aspen states that the Policy was for a homeowners association and thus a "deductible of up to 10%" as permissible. Thus, it is not clear if the cap was 5% or 10%, but as 5% was what was provided, the Court does not find this discrepancy to be significant to the findings above.

points to the intent of the legislature to "encourage the use of higher hurricane deductibles as a means of increasing the effective capacity of the hurricane insurance market in this state and as a means of limiting the impact of rapidly changing hurricane insurance premiums." Fla. Stat. § 627.701(6)(a) (2004 version). Plaintiff argues that the hurricane deductible of 5% is invalid and cannot be imposed on it since there was no offer of the 3% deductible.

In Response, Aspen argues first that, contrary to Plaintiff's Statement of the Facts, it did not fail to offer a 3% hurricane deductible, as its position is that there was no requirement for it to do so. According to Aspen, at the time of the contract, the statute did not apply to surplus lines insurers and Aspen's Wind Rating Guideline would not have allowed it to offer a 3% windstorm deductible for Visions I's property due to the location. However, it "does admit that it did not communicate an offer to the surplus lines agent to insure Vision I for a 3% windstorm deductible."

According to Aspen, the Florida Surplus Lines Service Office ("FSLSO") regulates surplus lines insurers in Florida and its position has been that Section 627.701(8) do not apply to surplus lines insurers.[3] Therefore, the FSLSO has not created, adopted, or approved any forms which a surplus lines insurer could use to comply with the offers authorized by Section 627.701(8). Aspen also points to language in Chapter 627 of the Florida Statutes in support of its argument that the provision does not apply. Specifically, Section 627.021(2)(e) states that "[t]his chapter does not apply to ..." "[s]urplus lines insurance placed under the provision of ss. 626.913–626.937." As surplus lines insurers are regulated less than general insurers, the same regulatory requirements would not apply. Furthermore, Aspen argues, *Essex Insurance Co. v. Zota*, 985 So.2d 1036 (Fla.2008), finding that the exclusionary language does not apply to surplus lines insurers, was not issued until 2008, after the policy was issued. Prior to that, in a footnote, the Second District Court of Appeals of Florida had noted that "section 627.701, Florida Statutes (1997), which places certain restrictions upon deductible provisions specific to hurricane damage subject to enforcement by the Department of Insurance, does not apply to the contract of insurance [as the defendant] is an excess lines carrier based in Connecticut and is not subject to regulation by the Florida Department of Insurance." *Gen. Star Indem. Co. v. West Fla. Village Inn, Inc.*, 874 So.2d 26, 30 (Fla. 2d DCA 2004). Therefore, Aspen contends, the understanding at the time the Policy was issued was that the requirement did not apply to surplus lines insurers.

2) Analysis

First, the Court is not persuaded by the opinion of the FSLSO, a "self-regulating

---

**3.** "Surplus-lines insurance is a type of insurance that a potential insured may obtain when the general-lines insurance market fails to provide a policy to cover the type of risk involved. *See* § 626.916(1)(a), Fla. Stat. (2003) (requiring that general-lines agents make a certified, diligent effort to obtain coverage from the general-lines market before resorting to the surplus-lines market). To ensure that there would be insurance companies willing to provide this type of coverage in our state, the Florida Legislature created a statutory scheme that permits out-of-state "unauthorized" insurers to provide surplus-lines coverage through in-state "surplus-lines agents," who serve as middlemen between surplus-lines insurers and "producing agents/general-lines agents," who, in turn, provide surplus-lines policies to insureds." *Essex Ins. Co. v. Zota*, 985 So.2d 1036, 1040 (Fla.2008) (citing Fla. Stat. §§ 626.913–626.937 (2003)).

organization," as to what the Legislature intended by Sections 627.701(8) or 627.021(2)(e). In addition, despite Aspen's argument that the *Essex* case came out after the Policy was issued, the Court does not find that surplus lines insurers were excluded from the provision. Prior to that case, the Florida Supreme Court had already addressed the wording of Section 627.021(2) and found that it only applied to part I of Chapter 627.

■ The Florida Supreme Court explained in *National Corporacion Venezolana, S.A. v. M/V Manaure V*, 511 So.2d 968, 970 (Fla.1987) as follows:

Chapter 627, entitled "Insurance Rates and Contracts," is one of nine chapters which make up the Florida Insurance Code. Chapter 627 is divided at this time into eighteen parts ... section 627.021 is located in part I, entitled "Rates and Rating Organizations" ... The Code, as originally enacted under chapter 59–205, Laws of Florida, was divided into thirty-three chapters and numerous sections. Prior to publication of the enrolled act in the Florida Statutes (1959), the Statutory Revision Department redivided the Code into nine chapters numbered 624 through 632. The original thirty-three chapters were redesignated as parts and their sections were renumbered. Chapter 16, "Rates and Rating Organizations," was redesignated as part I of chapter 627.

The Florida Supreme Court had already held that it was clear under "a full statutory analysis-[that] section 627.021(2) applies exclusively to *part I* of chapter 627." *Essex*, 985 So.2d at 1041–1042 (citing *M/V Manaure V*, 511 So.2d at 970–71; Fla. Stat. §§ 627.011–627.381 (2003) (part I of chapter 627)). Therefore, when the Legislature added "surplus lines insurance" to

the exclusionary provisions, it "knew and specifically intended that in adopting chapter 88–166, its newly enacted surplus-lines exclusionary provision (i.e., section 627.021(2)(d), Florida Statutes (Supp. 1988)) would only apply to *part I* of chapter 627, not *chapter* 627 in its entirety." *Id.* at 1042–1043. Therefore, though the *Essex* case had not been issued at the time the Policy was supplied, the Florida Supreme Court had already decided that the language did not encompass the entire Chapter, and thus, the surplus lines exclusion would have only been in regards to Part I, just as with the analysis of the marine exclusion in the *M/V Manaure V* case. Accordingly, the Court finds that the exclusion of Section 627.021(2)(e) did not apply to the entire chapter of 627 and thus surplus lines insurers were not excused from the deductible provision in Section 627.701(8) at the time the Policy was enacted.

■ As the provision did apply to surplus lines insurers, the Court turns next to the language of the statute to determine whether the offer of a 3% deductible was permissive or mandatory. A reading of the provision does not indicate that a provider *has* to provide "a deductible in an amount not exceeding 5 percent of the insured value with respect to a condominium association or cooperative association policy." It reads that "an insurer *may* offer [such] a deductible." (emphasis added). Thus, that provision does not appear to be intended as mandatory. However, *if* it does offer such an amount, a reading of the language indicates that it *is* mandatory that "the insurer also offers to the policyholder a deductible in the amount of 3 percent of the insured value." Therefore, as Aspen offered the 5%, it was obligated to also offer the 3% deductible.

■ However, the lack of a penalty further persuades the Court that summary

judgment on this issue is not appropriate. In *Chalfonte Condominium Apartment Association, Inc. v. QBE Insurance Corporation,* 526 F.Supp.2d 1251 (S.D.Fla. 2007)[4], and *RTG Furniture Corp. v. Industrial Risk Insurers,* 616 F.Supp.2d 1258 (S.D.Fla.2008), the courts reached similar conclusions, and the Court is persuaded by their reasoning. The Court will not create a penalty where the Legislature chose not to do so.[5] *RTG Furniture,* 616 F.Supp.2d at 1267 ("in the absence of an express penalty attached to this statute which prescribes the manner in which property insurers are to alert their insureds that the policy contains a separate hurricane deductible, the court is not at liberty to supply one."). If a penalty had been intended, the Legislature was fully capable of supplying one. For example, "[i]n several sections, the legislature expressly states that a violation of the statute results in the policy provision being rendered invalid and/or void. *See, e.g.,* Section 627.6474 (stating that "[a]ny contract provision that violates this section [about health insurance provider contracts] is void."); Section 627.415 (stating that "[a]ny policy provision in violation of this section [about charter, bylaw provisions] is invalid.")." *Chalfonte,* 526 F.Supp.2d at 1256. In other sections, specific remedies are provided: "[f]or example, in Section 627.410(e), the legislature made the penalty for failing to meet the filing requirements, allowing the Department of Insurance to "order the insurer to discontinue the issuance of policies for which the required filing was not made, until such time as the office determines that the required filing is properly submitted." " *Id.* Moreover, "Section 627.418(1) states that: [a]ny insurance policy, rider, or endorsement otherwise valid which contains any condition or provision not in compliance with the requirements of this code shall not be thereby rendered invalid, except as provided in s. 627.415, but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy, rider, or endorsement been in full compliance with this code." *Id.* at 1257. Thus, "the legislature seems to suggest that in the absence of an express penalty, courts should assume that a policy provision is valid despite noncompliance with the Insurance Code." *Id.* As the Florida Supreme Court stated in *Curry v. Lehman,* 55 Fla. 847, 47 So. 18 (1908), "it is the duty of the court to interpret laws and not to make them, and we are to make no subtraction or addition to the meaning of a statute." *Curry,* 47 So. at 20.

### III.  *CONCLUSION*

Accordingly, for the aforementioned reasons it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Partial Summary Judgment on the Invalidity of Aspen's "5% of TIV" Hurricane Deductible [DE–24] is hereby **DENIED.** Defendant's Motion for Judicial Notice [de–26] is **DENIED AS MOOT.** Defendant's Motion to Stay [DE–27] is **DENIED AS MOOT.**

---

4. The Court would note that on March 9, 2009, the Eleventh Circuit certified the question of what remedy an insured has for noncompliance with the statutory provision at issue (Florida Statute § 627.701(4)(a)), as the consequences of noncompliance with that provision had not yet been addressed by the Florida Supreme Court. *Chalfonte Condo.*

*Apt. Ass'n, Inc. v. QBE Ins. Corp.,* 561 F.3d 1267 (11th Cir.2009).

5. The Court would note that the result is thus the same even if Aspen's view that the status of the law at the time the Policy was entered into compelled a finding that it did not apply to surplus lines insurers.