**MERIDIAN CONSTRUCTION AND DEVELOPMENT, LLC, Plaintiff,**

v.

**ADMIRAL INSURANCE COMPANY, Defendant.**

Case No. 8:12–cv–971–T–26AEP.

United States District Court, M.D. Florida, Tampa Division.

Signed April 2, 2013.

5. These cases were argued on April 28, 2015, and a decision is expected by the end of this term.

Anthony Jaglal, Stephen M. Bull, Bull & Associates, PA, Orlando, FL, for Plaintiff.

Heather Cohen Szkaradek, Mitchel Chusid, Ritter, Chusid, Bivona & Cohen, LLP, Coral Springs, FL, for Defendant.

## ORDER

RICHARD A. LAZZARA, District Judge.

Before the Court are cross motions for summary judgment: (1) Defendant Admiral Insurance Company's Motion for Summary Judgment and Statement of Undisputed Facts (Dkts. 29 & 30), Plaintiff Meridian Construction and Development, LLC's Response in Opposition and Statement of Disputed Facts (Dkts. 74 & 75), and Defendant's Reply (Dkt. 80); and (2) Plaintiff Meridian Construction and Development, LLC's Motion for Summary Judgment, Statement of Undisputed Facts and Exhibits (Dkts. 33, 35 & 37–73), and Defendant Admiral Insurance Company's Memorandum in Opposition and Statement of Disputed Facts. (Dkts. 78 & 79). After careful consideration of the submissions of the parties and the entire file, the Court concludes the Defendant's motion should be granted and Plaintiff's motion should be denied.

## BACKGROUND

### The Condominium

Plaintiff Meridian Construction and Development, LLC (Meridian) is a contractor that provided construction work for D.R. Horton, Inc. (Horton) pursuant to a contract entered into in September 2004 for a project known as Terrace Ridge at Town Center East in Davenport, Polk County, Florida (the project).[1] Horton was the owner and the developer of the condominium project.[2] The condominium is controlled by the Terrace Ridge at Town Center East Condominium Association, Inc. (the Association).[3] Defendant Admiral Insurance Company (Admiral) issued three consecutive primary commercial general liability (CGL) policies to Meridian beginning May 1, 2005, 2006 and 2007.[4] A faulty roofing system discovered in 2007 led to a consolidated lawsuit in state circuit court involving the Association, Horton, Meridian, Hartford Fire Insurance Company (Hartford), and eight subcontractors on the project.[5] In this diversity action, Meridian seeks a declaration that Admiral must defend and indemnify Meridian in the state court lawsuit, and damages for breach of the CGL policies and/or excess liability policies.

### The Policy

Each CGL policy contains a special condition endorsement that requires Meridian to obtain certain items from its subcontractors in order to be covered by the policy for work performed by the subcontractors. The special condition endorsement provides as follows:

### ADDITIONAL CONDITIONS

### NAMED INSURED'S DUTIES WITH RESPECT TO INDEPENDENT CONTRACTORS

This endorsement modifies insurance provided under the following:

---

1. *See* dockets 40 & 41. The contract specifically named the contractor as Meridian Construction and Development, LLC, and Joe N. Guy Co., Inc., Joint Venture (the Joint Venture). *See* docket 29–8.

2. *See* docket 1–14, para. 8 and docket 43 at para. 10.

3. *See* docket 1–20 at para. 9.

4. *See* docket 42–2, Deriso affidavit at para. 4. The policy was cancelled effective December 25, 2007.

5. Joe N. Guy Co., Inc. is also named as a party.

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNER'S AND CONTRACTORS' PROTECTIVE LIABILITY
COVERAGE PART

### SCHEDULE

| | |
|---|---|
| General Aggregate Limit | $ 2,000,000 |
| Products–Completed Operations Aggregate Limit | $ 1,000,000 |
| Personal and Advertising Injury Limit | $ 1,000,000 |
| Each Occurrence Limit | $ 1,000,000 |

1. As a condition precedent to our binding and issuing this policy, you have agreed to obtain the following from each of your independent contractors and/or subcontractors for any project or construction activity which you perform and it is understood that no "bodily injury", "property damage" or "personal and advertising injury" liability coverage is afforded to you by this policy for any and all liability arising out of your operations unless this condition is satisfied:

 A. A Certificate of Insurance identifying you as an Additional Insured under each such contractor's or subcontractor's Commercial General Liability Insurance with Limits of Insurance equal to or greater than the Limits of Insurance shown in the Schedule, with respect to any liability arising out of ongoing operations performed by your independent contractors and/or subcontractors. Further, such Certificates of Insurance shall specify that the independent contractor's and/or subcontractor's insurance shall be primary to and shall not participate or contribute with the insurance afforded by this policy.

 B. A written contract wherein your independent contractor and/or subcontractor agrees to hold harmless, defend and indemnify you from and against all losses, costs, expenses, claims, "suits," "bodily injury," "property damage," "personal and advertising injury," or other damages to the fullest extent permitted by law, including with respect to your own negligence and excepting only your sole negligence, with respect to any liability arising out of or related to operations, work, products or services provided, performed or to be performed by your independent contractors and/or subcontractors. Such written contracts shall further specify that your independent contractor and/or subcontractor shall name you as an Additional Insured under that independent contractor's and/or subcontractor's Commercial General Liability Insurance as set forth in Section I.A. above prior to commencement of any operations.

II. The coverage afforded to you under this insurance, including any duty to defend or indemnify you, shall be excess over and shall not contribute with any insurance, whether collectible or not, naming you as an Additional Insured under your independent contractor's and/or subcontractor's insurance, regardless of whether the Other Insurance conditions of coverage, or any other policy language in your independent contractor's and/or subcontractor's insurance render it excess, contingent or contributory.

III. You must retain Certificates of Insurance and Additional Insured Endorsements that you obtain from each

independent contractor and/or subcontractor and provide copies to us upon our written or oral request up to ten years after the Policy Period.

IV. You must retain all written contracts that you obtain from each independent contractor and/or subcontractor and provide copies to us upon our written or oral request up to ten years after the Policy Period.

If you have fulfilled all of the Additional Conditions set forth in Section I through IV above, and your independent contractor's and/or subcontractor's Commercial General Liability insurer or insurers decline to defend you, then we will undertake to do so for any covered claim. In that event, you will fully cooperate with us in pursuing those insurers to assume the defense from us and reimburse us for any costs we incurred.[6]

*The Lawsuits*

In April 2007, Horton raised issues about the roofing system at the project. David Deriso, as president of Meridian, visited the site with a representative of the roofing subcontractor, The Roof Depot, Inc.[7] They learned that Horton had already engaged another roofing subcontractor, Collis Roofing, Inc., and therefore it was unclear as to what issues existed at the time the new subcontractor began

work on the project.[8] In September 2008, Horton as owner sued Meridian and Joe N. Guy Co., Inc., as contractor for construction defects in the roofing system of the project (the 2008 lawsuit).[9]

After giving notice of the construction defect pursuant to section 558.004 of the Florida Statutes, on October 6, 2009, the Association filed a lawsuit against Horton titled *Terrace Ridge at Town Center East Condominiums Association, Inc. v. D.R. Horton, Inc.,* Case No. 09–CA–11076, pending in the Circuit Court of the Tenth Judicial Circuit in and for Polk County, Florida (the 2009 lawsuit).[10] On November 6, 2009, Horton, filed its third-party complaint against Meridian and others in the 2009 lawsuit.[11] In November 2010, Meridian filed a fourth-party complaint against seven of its subcontractors at the project.[12] In May 2011, the 2008 lawsuit was voluntarily dismissed upon stipulation that all claims would be decided in the 2009 lawsuit, which is now referred to as the underlying lawsuit.[13] That action is scheduled for trial commencing July 28, 2014.[14]

*The Conduct of the Parties*

On September 19, 2008, Deriso of Meridian contacted his insurance agent, David DiPonzio, of BB & T Insurance to notify him of the 2008 lawsuit.[15] Deriso believed

---

6. *See* docket 71–4.

7. *See* docket 42–2 at para. 7.

8. *See* docket 42–2 at para. 7.

9. *See* dockets 43 & 44. The complaint also contained a count to recover against the performance bond which named Hartford, as surety for the performance of Meridian for the benefit of Horton.

10. *See* docket 1–14, Exh. D.

11. *See* docket 1–20. Joe N. Guy Co., Inc. is a third-party defendant as well as Hartford as surety.

12. *See* docket 29–3. At this time, eight subcontractors are being sued as fourth-party defendants in the underlying action. *See* docket 29–4 (Amendment to Fourth–Party Complaint).

13. *See* docket 29–6 & 29–7, docket 42–2 at para. 13, and docket 71.

14. *See* docket 33, Exh. P.

15. *See* docket 42–2 at para. 9.

DiPonzio was Admiral's representative.[16] He did not know whether DiPonzio contacted Admiral, and Admiral claims that it was not notified at this time. Deriso contends that DiPonzio and others with him reviewed the language in the subcontractors' agreements and certificates of insurance to ensure compliance with the special condition endorsement.[17] Deriso avers that no one notified him of any deficiencies in the language of the subcontracts or the certificates of insurance.[18] Admiral's corporate representative Ms. Letonya Darby, testified that DiPonzio was not a representative of Admiral. Admiral, as an excess and surplus-lines insurer, offered its insurance through its agent Genesee General.

On February 25, 2009, the Association sent Horton a construction defect notice pursuant to section 558.004 of the Florida Statutes,[19] and on March 16, 2009, Horton forwarded to Meridian the notice.[20] Some time in March 2009, Deriso contacted DiPonzio to notify him of the claims.[21] The record is devoid of any indication that Admiral received notice of either the 2008 lawsuit or the construction defect notice at this time.

As of July 13, 2009, however, Admiral had notice of the claim regarding the project as it acknowledged in two letters to Meridian.[22] On July 15, 2009, Admiral's adjuster Marshall Austin, along with Deriso, first made an investigative site visit of the project.[23] On August 12, 2009, counsel for Meridian sent to Austin, as he had requested, a copy of the expert reports regarding the section 558 notice.[24] On October 14, 2009, counsel for Meridian sent a copy of the amended complaint in the 2008 lawsuit to Austin.[25] In February 2010, counsel for Meridian sent to Austin additional pleadings in the 2008 lawsuit as well as the third-party complaint in the 2009 lawsuit.[26] Again, in July 2011, counsel for Meridian forwarded pleadings to Austin.[27] Ms. Darby, however, denies that Admiral received copies of the pleadings at these times. At some point in 2010 or 2011, Admiral closed the file because Austin indicated that Hartford[28] was handling the case.[29]

Finally Deriso sent certified letters to Admiral demanding that Admiral defend and indemnify Meridian on December 27, 2011, and January 28, 2012.[30] Both letters

**16.** *See* docket 74–2 at para. 5 and docket 79–2 (Depo. of Deriso at 86).

**17.** *See* docket 74–2 at para. 5.

**18.** *See* docket 74–2 at para. 7.

**19.** *See* docket 1–20 at para. 10, docket 29–16, and docket 45, Exh. G.

**20.** *See* docket 29–16 and docket 42–2 at para. 9.

**21.** *See* docket 42–2 at para. 9.

**22.** *See* docket 51–1 and docket 51–2.

**23.** *See* docket 42–2 at para. 10.

**24.** *See* docket 42–2 at para. 11, docket 51–3 and docket 54–1, 57–1, 59–1, 60–1, 611, 62–1, 64–1, 65–1, 67–1, 70–1, 72–1 & 73–1.

**25.** *See* docket 42–2 at para. 12. Paragraph 15 of the Amended Complaint alleges that "[t]he Construction Defects were allowing moisture and water to penetrate and cause damage to certain internal and external portions of the Project, including, without limitation, structural elements, carpet, drywall, framing and other elements." *See* docket 37–1.

**26.** *See* docket 42–2 at para. 13 and docket 37–2.

**27.** *See* docket 37–3.

**28.** Hartford is Meridian's surety on the project, however, and never provided a defense for Meridian. *See* docket 42–2 at para. 17.

**29.** *See* docket 47–1 at p. 54.

**30.** *See* docket 42–2 at para. 16 and docket 71–1 & 71–2.

were addressed to Ms. Darby. On January 10, 2012, Meridian's counsel emailed Ms. Darby about the certificates of completion and occupancy.[31] On January 19, 2012, Ms. Darby responded by email, attaching the insurance policy and pointing out that the Additional Conditions endorsement "requires that Meridian obtain Certificates of Insurance from its subcontractors identifying it as an additional insured under its policies with equal to or greater than the limits of its own policy" and "requires that the contract name Meridian as an additional insured." She specifically stated that "[t]hese are both conditions precedents to coverage."[32] She noted that the contracts received thus far did not contain an additional insured requirement provision.

*Meridian's Contacts with its Subcontractors*

In May 2009, Meridian[33] sent a section 558.004 notice to a subcontractor on the project, attaching the February and March 2009 letters constituting the Association's section 558.004 notice.[34] Almost one year later, on February 5, 2010, Meridian sent section 558.004 notices to an additional twelve subcontractors.[35] On March 10, 2010, another notice was sent to another subcontractor.[36] None of these notices to the subcontractors included a request to defend or indemnify Meridian.

Out of the fourteen total subcontractors on the project, eight are named in the underlying action.[37] On January 26, 2012, Meridian sent letters to six subcontractors[38] demanding that they defend or indemnify Meridian and invoking its rights as an additional insured under their policies.[39] Although Meridian did not send these letters to the subcontractors' CGL insurers, two CGL companies responded with letters declining coverage.[40] Meridian sent its request for a defense and indemnification on March 6, 2012, to three subcontractors, again without sending to their CGL insurers.[41] Finally on November 13, 2012, Meridian sent letters to four subcontractors and their CGL insurers.[42] Two more letters declining coverage came from CGL insurers.[43] In general, the letters of declination cited that Meridian was not an additional insured under their policies and was not entitled to contractual indemnification. In one instance, coverage would have been only excess.[44] To date, two of the CGL insurers have not responded about their stance on coverage

## APPLICABLE LAW

■ Summary judgment is properly granted where there is no genuine dispute regarding a material fact. Fed.R.Civ.P. 56(a). The court must review the record,

---

31. *See* docket 71–3.

32. *See* docket 71–3.

33. The construction contract was entered into between Horton and two entities as the contractor: "Meridian Construction and Development, LLC. and Joe N. Guy Co., Inc., Joint Venture." The attorney writing the letter refers to the entities as the Joint Venture as opposed to just Meridian. *See* docket 29–17.

34. *See* docket 29–17.

35. *See* docket 29–18.

36. *See* docket 29–19.

37. *See* docket 74–2 at para. 10.

38. Eight subcontractors are being sued in the underlying action. *See* docket 29–4.

39. *See* docket 29–20.

40. *See* docket 29–21, 29–22.

41. *See* docket 29–23.

42. *See* docket 29–25.

43. *See* docket 29–26, 29–27.

44. *See* docket 29–27.

and all of its factual inferences, in the light most favorable to the nonmoving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). In this case with cross-summary judgment motions, consideration of each motion must be undertaken on its own merits with inferences drawn in favor of the nonmoving party on each motion. Summary judgment is a particularly appropriate vehicle to determine insurance coverage, however, because the interpretation of a written contract is a question of law for the court. *See Technical Coating Applicators, Inc. v. U.S. Fidelity and Guar., Co.*, 157 F.3d 843 (11th Cir.1998); *DEC Elec., Inc. v. Raphael Constr. Corp.*, 558 So.2d 427, 428 (Fla.1990).

▪ Sitting in diversity, as in this case, and considering state-law contract claims, the federal court must apply the substantive law of the forum state. *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 412 F.3d 1224, 1227 (11th Cir.2005). The insurance policy and the coverage issues are therefore governed by Florida law. A declaratory judgment is a viable avenue for the court to determine the duty to defend or indemnify. *Higgins v. State Farm Fire & Cas. Co.*, 894 So.2d 5, 9 (Fla.2004). Should this Court determine an ambiguity exists in the policy, under Florida law, the ambiguity is a question of law to be decided by the court. *See Gulf Tampa Drydock Co. v. Great Atlantic Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir. 1985) (citing *Smith v. State Farm Mut. Auto. Ins. Co.*, 231 So.2d 193, 194 (Fla. 1970)).

▪ Under Florida law, "insurance contracts must be construed in accordance with the plain language of the policy."

*Sphinx*, 412 F.3d at 1227–28 (quoting *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So.2d 161, 165 (Fla.2003)). An ambiguous provision is "susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage." *Swire*, 845 So.2d at 165 (quoting *Auto–Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla.2000)). If the policy is ambiguous, then the ambiguous provision must be construed in favor of the insured and against the insurer who drafted the policy. *Swire*, 845 So.2d at 165. "[S]imply because a provision is complex and requires analysis for application, it is not automatically rendered ambiguous." *Id.* The court "should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *Id.* (quoting *Anderson*, 756 So.2d at 34).

▪ The duty to defend is separate and distinct from the duty to indemnify. *First Am. Title Ins. Co. v. National Union Fire Ins. Co.*, 695 So.2d 475, 476 (Fla.Dist. Ct.App.1997). The duty to defend is determined solely from the allegations of the complaint. *WellCare of Fla., Inc. v. American Int'l Specialty Lines Ins. Co.*, 16 So.3d 904, 906 (Fla.Dist.Ct.App.2009) (citing *Biltmore Constr. Co. v. Owners Ins. Co.*, 842 So.2d 947, 949 (Fla.Dist.Ct.App. 2003)). If the allegations of the complaint show the applicability of an exclusion to the policy, then the insurer has no duty to defend. *Landis v. Allstate Ins. Co.*, 546 So.2d 1051, 1052 (Fla.1989). Exceptions exist, however, "where an insurer's claim that there is no duty to defend is based on factual issues that would not normally be alleged in the underlying complaint." *Higgins*, 894 So.2d at 10 n. 2.[45]

---

**45.** With respect to the duty to indemnify, generally a resolution of the underlying claim is necessary to determine if the claim is covered. *Northland Cas. Co. v. HBE Corp.*, 160 F.Supp.2d 1348, 1360 (M.D.Fla.2001). If the allegations "could under no circumstances" trigger the duty to indemnify, then the court could determine such a duty before the underlying action concluded. *Id.*

## ADMIRAL'S MOTION

Admiral contends that it has no duty to either defend or indemnify Meridian because Meridian has failed to satisfy conditions precedent to coverage. Specifically, Meridian failed to obtain the following from each of its subcontractors on the project: (1) a Certificate of Insurance identifying Admiral as an additional insured on the subcontractor's CGL policy and specifying that the subcontractor's insurance is primary to and not contributory with Admiral's policy;[46] and (2) a written contract agreeing to hold Admiral harmless, to defend and indemnify Admiral, and to designate Admiral as an additional insured on the subcontractor's policy.[47] Meridian also failed to retain for ten years the Certificates of Insurance, Additional Insured Endorsements, and written subcontractor contracts.[48]

Meridian counters that these conditions precedent apply before coverage can begin,[49] as opposed to after coverage is in place, and therefore no agreement was ever reached between the parties and the contract of insurance was void ab initio.[50] Relying on this interpretation of the policy, Meridian asserts that Admiral waived its right to raise any alleged deficiencies in the language of the subcontractors' written contracts or certificates of insurance. Meridian bases it waiver argument on the fact that DiPonzio reviewed the subcontracts and certificates of insurance as Meridian collected them, long before Admiral first raised the issue of compliance with the special condition endorsement on February 1, 2012.

■ Before addressing Meridian's waiver argument, the Court must determine whether the conditions listed in the endorsement constitute a condition precedent to coverage or to the very existence of a policy at all. Although Meridian urges this Court to concentrate on the first phrase of the endorsement referring to "a condition precedent to our binding and issuing this policy," the Court must read the policy as a whole without giving one particular phrase undue weight. *See Swire*, 845 So.2d at 165. Special condition endorsements similar to, but not precisely the same as, the one at issue, which require obtaining certificates of insurance and being named as an additional insured, have been found to contain conditions precedent to coverage. *See, e.g., Certain Interested Underwriters at Lloyd's, London v. Halikoytakis*, 444 Fed.Appx. 328 (11th Cir.2011) (unpublished opinion affirming *Certain Interested Underwriters at Lloyd's, London v. Halikoytakis*, No. 8:09–cv–1081–T–17TGW, 2011 WL 1296816 (M.D.Fla. Mar. 31, 2011)).

In *Halikoytakis*, the special condition addressing independent contractors stated that if the insured hired a contractor, it would be a condition of coverage to use only those contractors insured for CGL coverage with limits equal to that of the

---

**46.** *See* docket 71–4, Endorsement Article 1.A.

**47.** *See* docket 71–4, Endorsement Article 1.B. The contracts obtained did not satisfy the conditions.

**48.** *See* docket 71–4, Endorsement Articles III and IV.

**49.** The first phrase of Article I of the endorsement states that "[a]s a condition precedent to our binding and issuing this policy, you have agreed to obtain ..."

**50.** Meridian cites cases for the general proposition that a condition precedent to the formation of the contract rather than the performance of the contract will render the contract void ab initio if never fulfilled. *See Surgical Partners, LLC v. Choi*, 100 So.3d 1267, 1269 (Fla.Dist.Ct.App.2012); *Diaz v. Florida Ins. Guar. Ass'n, Inc.*, 650 So.2d 675 (Fla.Dist.Ct. App.1995) (holding insurance policy void ab initio when issued based on insured's misrepresentations).

policy at issue. That same provision, however, further stated that the insured "should" be named as an additional insured and "should" obtain a certificate of insurance as confirmation. The last sentence provided that failure to comply would invalidate the insurance. Halykoytakis admitted that he did not ask to be an additional insured on the independent contractor's policy or obtain a certificate of insurance showing confirmation. The district court found, and the Eleventh Circuit expressly affirmed in an unpublished opinion, that the insured was not entitled to coverage for the claim due to his failure to comply with the special condition and the insurer had no duty to defend or indemnify.

In *Sharp Gen. Contractors, Inc. v. Mt. Hawley Ins. Co.*, 604 F.Supp.2d 1360 (S.D.Fla.2009), the contractors endorsement required obtaining certificates of insurance, written confirmation of additional insured status, and written subcontractor agreements with hold harmless clauses. The endorsement also contained a provision referring to the conditions as "conditions of coverage" and a provision stating that failure to comply with its conditions would void coverage for claims falling under the purview of the endorsement. The insured failed to secure some of the these items, and the court found the provision acted to void coverage for any claim brought by the insured for work by sub-contractors falling under the endorsement.[51]

In *Scottsdale Ins. Co. v. Essex Ins. Co.*, 98 Cal.App.4th 86, 119 Cal.Rptr.2d 62 (Cal. Ct.App.2002), the court noted that policies with endorsements voiding derivative liability for work performed by subcontractors who do not provide the insurance mandated by the special conditions "are nonstandard but not unusual." *Id.* at 94 n. 2, 119 Cal.Rptr.2d 62. The *Scottsdale* court reversed the trial court that had held an endorsement requiring special conditions, similar to those at issue here, did not bar coverage. The endorsement in *Scottsdale* did not contain a specific provision voiding coverage of claims if the special conditions were not met, much like the endorsement in the present case. The endorsement did, however, contain a descriptive phrase referring to the listed conditions as "conditions for coverage."[52]

Synthesizing these cases and recognizing the more relevant precedential value of the cases from the Eleventh Circuit relying on Florida law, the Court finds that the particular endorsement in this case warrants the same result. While at first blush, the reference to obtaining the necessary conditions before Admiral would "bind or issue" the policy might seem to create a condition precedent to obtaining coverage at all, when the endorsement is read as a whole, the requirements are conditions precedent to coverage. The Court finds that the mere absence of a

**51.** In *Mt. Hawley Ins. Co. v. Total Bldg. Sys., Inc.*, 2008 WL 2757076 (D.Ariz.2008), an almost verbatim special conditions endorsement to the one in *Sharp* was interpreted. As in *Sharp*, the insured was not relieved of the duties of securing the special conditions and failure to do so voided coverage for claims arising from work performed by subcontractors who did not obtain the specified insurance protection.

**52.** In *North Am. Capacity Ins. Co. v. Claremont Liab. Ins.*, 177 Cal.App.4th 272, 99 Cal. Rptr.3d 225 (Cal.Ct.App.2009), the court construed yet another similar independent contractors endorsement and found it enforceable as conditions precedent to coverage, citing *Scottsdale*. The endorsement contained neither any reference to "conditions of coverage" nor voidance of the insurance claim. The court found that under the clear and plain wording of the policy, coverage for subcontractors' work would not apply unless compliance with the endorsement was complete.

descriptive phrase denominating the conditions as "conditions of coverage" does not alter the fact that the conditions listed in the special condition are conditions of coverage pursuant to a reading of the policy as a whole. Moreover, the absence of an express phrase voiding the claim does not prevent the endorsement from voiding coverage if the policy, when read as a whole, bars coverage if the special conditions are not met. The policy here has long been issued, and there is no duty under the endorsement on the part of Admiral to check the sufficiency of the certificates of insurance and written contracts before the policy is issued.

The plain wording of the policy with respect specifically to the duty to defend expressly provides in the special conditions endorsement that Admiral will not defend Meridian for subcontractor's work unless all of the conditions precedent have been fulfilled and the subcontractors' CGL insurers have declined to defend Meridian, and only then when a claim is covered.[53] The special condition endorsement specifies that coverage under Admiral's policy would be excess to and not contributory with the subcontractor's insurance, regardless of any language to the contrary.[54] None of the certificates of insurance specify that the subcontractors' insurance is primary to and not participatory or contributory with Admiral's insurance provided to Meridian.[55] Hence, the duty to defend was not triggered.

 Meridian's argument that Admiral has waived the right to now deem the subcontracts and certificates of insurance insufficient is not persuasive. Even assuming DiPonzio reviewed the subcon-

tracts and certificates of insurance before the policy issued, the record reveals unequivocally that DiPonzio was a retail agent of Meridian, and not a surplus-lines agent of Admiral. *See Essex Ins. Co. v. Zota*, 985 So.2d 1036, 1040 & 1047–48 (Fla. Dist.Ct.App.2008) (holding that surplus-line agents serve as middlemen between surplus-line insurers and the retail agents who obtain the surplus-lines policies to insureds[56] and holding that independent agent of insured is agent of insured, not agent of excess and surplus-lines insurer). Genesee General is Admiral's surplus-lines agent.[57] To the extent DiPonzio may have reviewed the documents, he did so as an Meridian's retail agent as opposed to an agent of Admiral.

### *MERIDIAN'S MOTION*

Meridian contends that Admiral had a duty to defend the underlying action because the complaint alleges consequential damages caused by Meridian and damages to the project arising from the defective work of subcontractors. This case falls within one of the natural exceptions referred to in *Higgins. See also Composite Structures, Inc. v. Continental Ins. Co.*, 903 F.Supp.2d 1284 (M.D.Fla.2012) (finding a natural exception to basing the duty to defend solely on the allegations of the complaint). Alleging the sufficiency of the subcontractor's certificates of insurance and written subcontracts would not normally be alleged in the underlying action. For this reason and the reasons set forth above, the Court finds that neither the duty to defend nor indemnify was triggered in this case.

It is therefore **ORDERED AND ADJUDGED** that Admiral Insurance Compa-

---

53. *See* docket 71–4, Endorsement Article IV.

54. *See* docket 71–4, Endorsement Article II.

55. *See* docket 49–1 at p. 163.

56. *See also Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 643 F.Supp.2d 1356, 1360 n. 3 (S.D.Fla.2009) (quoting *Essex* ).

57. *See* docket 80–3 and docket 29–29, 29–30, 29–31 & 29–32.

ny's Motion for Summary Judgment (Dkt. 30) is **GRANTED** and Meridian Construction and Development, LLC's Motion for Summary Judgment (Dkt. 35) is **DENIED.** The Clerk is directed to enter judgment for Defendant and against Plaintiff and to close this case.